IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SIDNEY P. MARTIN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 7:15-cv-00182 |
| MR. BREWER, *et al.*, | ) ) | By: Elizabeth K. Dillon United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Sidney P. Martin, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, naming as defendants various employees of the Virginia Department of Corrections (VDOC). Pending before the court is Martin's motion for preliminary injunction (Dkt. No. 3). For the reasons discussed below, the court will deny the motion.

## I. BACKGROUND

Construed liberally, Martin's complaint asserts three basic claims. First, he claims that he notified officials at Red Onion State Prison (ROSP) that he feared an attack by other inmates, but they were deliberately indifferent to the risk of attack, and two inmates subsequently attacked him on March 30, 2015. The attack resulted in physical injuries to Martin's head and back, as well as emotional injuries. Martin alleges that defendants' failure to protect him constituted deliberate indifference in violation of his Eighth Amendment rights. (Dkt. No. 1 at 4–5.) Relatedly, he alleges that the attack was permitted or facilitated by certain defendants, who disregarded the proper procedure of keeping top tier and bottom tier inmates separate and instead "let[] known gang members enter the pod when they are from the bottom tier and top tier inmates are out." (*Id.* at 5.)

His second and third claims both relate to his housing status. Specifically, he alleges that, at points both before and after the attack, he was housed in disciplinary confinement or punitive segregation. As to certain periods before the attack, he claims that he purposefully committed a disciplinary infraction for the sole purpose of getting himself in segregation, where he could be safe. As to his current housing, he complains that he should be in protective custody instead of other types of segregation. In declarations submitted to the court, he has explained that each time he refuses to go to the general population, he receives a disciplinary charge for refusing to obey an order and is kept in disciplinary segregation. He claims that he has repeatedly requested protective custody and it has been denied.

His third claim challenges the condition of his segregation and the treatment he has received. For example, he complains about the denial of certain benefits while in segregation, such as the fact that he has not been allowed outside recreation and has been "constantly" refused showers. (Dkt. No. 1 at 5.)

He seeks an injunction requiring that he be transferred to a protective custody unit and asks for expungement of all institutional charges related to his "fearing to stay in the general population." (*Id.* at 6.) He also seeks compensatory and punitive damages. (*Id.*)

With the complaint, Martin filed a motion for a temporary restraining order and preliminary injunction. (Dkt. No. 3.) In his motion—and in eight subsequently-submitted declarations in further support of his motion (Dkt. Nos. 23, 24, 26, 35, 39, 41, 43, 44)—he reiterates his allegations from his complaint that he continues to be denied showers and recreation. In his more recent declarations, he raises additional issues not set forth in his complaint, such as allegations that prison officials have interfered with his mail, taken money and hygiene items from him, improperly confiscated his legal papers, sprayed him with tear gas twice, and refused to provide him with

2

grievance forms. He requests that the court order his immediate transfer to protective custody status, where he would presumably have more privileges and be protected from assaults by other inmates. In recent submissions, he also requests that the court "stop" the alleged harassment.

As directed by the court, defendants filed a response to the motion for preliminary injunction on June 12, 2015. The response includes an affidavit from B. Stallard, who currently is Martin's caseworker at ROSP. According to Stallard, ROSP moved Martin into a segregated housing unit after the March 30, 2015 fight between Martin and two other inmates. Since then, the prison "has taken steps to ensure that the other two inmates are kept separate and apart from Martin." (Dkt. No. 34 at 1 (citing Stallard Aff. ¶ 8).) Specifically, the two inmates who attacked him (or whom he fought with), and Gosnell, the inmate who Martin alleges arranged the attack, are all designated on Martin's "keep separate" list. (*Id.*) This designation, which differs from a "documented enemy" designation, is "used to ensure that the institution does not put offenders together when that placement might cause a problem between the offenders." (*Id.*)

Stallard also avers that Martin has a pending disciplinary charge against him for failing to obey an order and thus is assigned to pre-hearing detention status.[1] (Dkt. No. 34-1, Stallard Aff. ¶ 6.) This status means that he is in a single cell and is not placed in a congregated setting with other inmates.[2] (*Id.* ¶ 7.) According to Stallard, Martin is not currently assigned to disciplinary segregation, which is a separate security status. Defendants also claim that Martin is not entitled to

---

[1] The VDOC policy concerning offenders separated from the general population refers to three different "statuses: general detention, pre-hearing detention, and disciplinary segregation." (Dkt. No. 34-1 Stallard Aff. at ¶ 5; *id.* at 4, OP 861.3, § III..) Protective custody, by contrast, is a "special purpose general population housing unit." (Dkt. No. 34-1 at 4, OP 861.3, § III.)

[2] Stallard's affidavit was dated June 12, 2015. The policy governing pre-hearing detention states that the maximum total period in this status "shall not exceed fifteen days." (Dkt. No. 34-1, OP 861.3, § VII(A)(4).)) The court does not know with certainty, therefore, where Martin is housed as of the date of this opinion, although in his most recent declaration to the court, he continues to complain that he is being housed in segregation.

3

protective custody because he has been given, but not turned in, any enemy summary forms and thus has no documented enemies.[3] According to Stallard, protective custody requires "substantial credible information" documenting the need for such status, as well as an investigation into the offender's claimed enemies [and g]enerally . . . is not conducted unless and until the offender has turned in an Enemy Summary Form." (Dkt. No. 34-1, Stallard Aff. ¶ 11; *see also id.* at 22-37, OP 830.5, titled "Transfers, Facility Reassignments".) Stallard concludes that Martin is "ineligible" for that particular security status at this time.[4]

Defendants thus summarize Martin's request for an injunction as "asking this [c]ourt to side-step the VDOC procedures that must be followed before an inmate can be placed into protective custody, disturb the *status quo*, and affirmatively order VDOC to give him a specific security classification." They urge the court to deny the motion.

## II. DISCUSSION

Preliminary injunctive relief is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). The party seeking a preliminary injunction must make a clear showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, a

---

[3] Defendants also argue that Martin has not shown he is likely to succeed on the merits of his claims because he has not exhausted his administrative remedies as to either his failure-to-protect claim or any claims related to his housing status. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (stating that exhaustion of administrative remedies is a "prerequisite to suit" for a prisoner's civil right suit). In light of the court's determination that Martin cannot show irreparable harm, it does not address this argument at this time.

[4] Martin disputes defendants' contention that they cannot place Martin in protective custody because he has not identified any specific person as a known enemy. (Dkt. No. 34 at 2.) He counters that he does not know who the individuals are that are likely to attack him, only that unspecified gang members have threatened that he will be attacked because he "pressed charges" against his previous attackers and "snitched" on Gosnell. (Dkt. No. 26 at 2.) Martin also alleges, in declarations dated after Stallard's, that he has turned in enemy forms, but "nothing is being done." (Dkt. No. 35 at 1; Dkt. No. 43 at 1.)

plaintiff seeks a preliminary injunction that mandates action, as opposed to merely preserving the status quo pending trial, the standard set forth above is even "more searching." *Perry v. Judd*, 471 F. App'x 219, 223-224 (4th Cir. 2012); *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004) (noting that mandatory preliminary injunctions "normally should be granted only in those circumstances when the exigencies of the situation demand such relief.") (citation omitted).

As discussed below, Martin has failed to satisfy the second *Winter* element; thus, the court does not address the other three factors. *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) ("*Winter* articulates four requirements, each of which must be satisfied as articulated").[5] To establish the requisite irreparable harm, Martin must show more than a "*possibility*" of irreparable harm—rather, he must show that imminent, "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 21–22. In one of his recent declarations, Martin identifies three harms that will occur without an injunction: (1) "further harm from gang members"; (2) negative effects on his mental health—increased anxiety—due to his continued confinement in segregation; and (3) prison officials continuing to tamper with his mail.[6] (Dkt. No. 35 at 2.)

As to the first of these harms, Martin repeatedly avers that he has been the subject of threats from unnamed gang members and thus needs protective custody status. But the undisputed evidence before the court is that he is currently housed in segregation. *See supra* n. 2. Given this evidence, injunctive relief is not necessary to prevent an attack since his current housing status

---

[5] *Real Truth About Obama* was overruled on other grounds by *Citzens United v. Fed. Election Comm'n,* 130 S. Ct. 876 (2010). Subsequently, the Fourth Circuit panel reissued the parts of the opinion addressing the preliminary injunction standard. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 607 F.3d 355, 355 (4th Cir. 2010) (Order). Thus, the case remains good law as it relates to the preliminary injunction issue here.

[6] Martin does not explain why or how a transfer to a protective custody unit would stop the alleged mail tampering.

5

means he is in a cell by himself and is not placed into any congregated settings.[7] He simply has not shown that, in the absence of the injunction he seeks, an attack is *likely*. *Cf. Winter*, 555 U.S. at 21-22.

Furthermore, any claim of harm premised on the fact that he was previously attacked does not alone entitle him to relief because prospective injunctive relief is not available to remedy only past harms. *See Eagle on Alliance v. Jewell*, No. 2:13cv371, 2013 WL 6188998, at *9 (E.D. Va. Nov. 22, 2013) ("An injunction is designed to deter future wrongful acts, . . . and thus, while past harm is relevant, the ultimate inquiry remains whether there is a real and immediate threat of repeated injury.") (internal quotation marks and citations omitted). The mere fact that Martin was attacked previously (or that defendants were previously deliberately indifferent to the risk of such attack once before) does not compel the conclusion that he would be entitled to injunctive relief in the form of protective custody, even if he succeeded on his failure-to-protect claim at trial. 555 U.S. at 22.

To the extent Martin is claiming harm from being kept in segregation or from the *conditions* while in segregation,[8] those claims (if he could succeed on them) could potentially be compensated

---

[7] Significantly, Martin does not dispute that a charge is pending against him. Instead, he explains that he "is receiving charges for refusing to go back to the general population." (Dkt. No. 23 at 2.) He further argues that continuing to charge him with a disciplinary offense for refusing to return to the general population is violative of VDOC's amended policy in Operating Procedure 830.6, § IV(D)(2), which provides that an inmate "who refuse[s] to return to the general population should be evaluated for assignment to the *Steps to Achieve Reintegration (STAR) Program* in accordance with Operating Procedure 830.5, *Transfers, Facility Reassignments*." (Dkt. No. 23-1 at 5.) Even if VDOC is violating its own policy, that alone is insufficient to show a violation of a prisoner's constitutional rights. *See Middleton v. Zych*, No. 7:12cv266, 2012 WL 4742777, at * 2, n.7 (W.D. Va. Oct. 4, 2012) *aff'd*, 514 F. App'x 401 (4th Cir. 2013) ("[A] claim that prison officials have not followed their own policies or procedures does not amount to a constitutional violation."); *see also United States v. Caceres*, 440 U.S. 741, 751–52 (1978) (where a government agency is not constitutionally required to adopt certain regulations, a violation of those regulations, without more, does not "raise any constitutional questions").

[8] Martin asserts that the conditions of his confinement are cruel and unusual and consequently violate the Eighth Amendment. (Dkt. No. 3-2 at 2). In his various declarations, he alleges that prison officials are throwing away his legal papers, making it impossible to research case law and prosecute this case, and refusing him phone calls, recreation, and showers. To succeed on such a constitutional claim, he would have to show that the conditions resulted

(Continued on next page.)

after a full trial on the merits.  Thus, those potential "harms" do not constitute the *irreparable* harm necessary to obtain preliminary injunctive relief.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also Hughes Network Sys., Inc. v. InterDigital Comm'ns Corp.*, 17 F.3d 691, 693–94 (4th Cir. 1994) (noting that a preliminary injunction is not generally available where the harm at issue can be remedied by money damages).

Martin's request to be transferred to protective custody also overlooks the authority holding that a prisoner has no constitutional right to be housed in a particular facility or unit.  *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995); *Meachum v. Farno*, 427 U.S. 215, 223–24 (1976).  In this respect, Martin's request for a mandatory preliminary injunction to be housed in a particular unit is contrary to the strict limitations on federal court interference with prison administration.  As the United States Court of Appeals for the Fourth Circuit has cautioned:

> sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts.  This is true where conditions at the prison have been adjudged unconstitutional following trial on the merits.  It is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made.

*Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994); *see also Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) (vacating a preliminary injunction issued by a district court, noting the "wide-ranging deference" to prison administrators by federal courts, and recognizing that "courts are ill-equipped to deal with problems of prison administrators").

---

(Continued from prior page.)

in serious physical or emotional injuries or the grave risk of such harm.  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *see Beverati v. Smith*, 120 F.3d 500, 504–05 & n.5 (4th Cir. 1997) (rejecting claim based on confinement in administrative segregation because plaintiff made no showing that the conditions resulted in sufficiently serious injuries or risk of injury).  None of Martin's filings raise allegations that the conditions of his current confinement pose a serious risk of harm or have resulted in such severe injuries.

7

Case 7:15-cv-00182-EKD-RSB   Document 45   Filed 07/16/15   Page 7 of 8   Pageid#: 238

For all of these reasons, the court concludes Martin has not shown he is likely to suffer irreparable harm in the absence of a preliminary injunction requiring that ROSP transfer him to protective custody.

### III.  CONCLUSION

The court will deny Martin's motion for preliminary injunctive relief for the reasons stated herein.  The clerk is directed to send copies of this memorandum opinion and accompanying order to counsel of record and directly to Martin.

Entered: July 16, 2015

*Elizabeth K. Dillon*
United States District Judge